# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

Common hallway outside 740 W. Wisconsin Avenue, Apartment 228, Milwaukee WI, fully described in Attachment A.

Case No. 19-M-145 (DEJ)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

Common hallway outside 740 W. Wisconsin Avenue, Apartment 228, Milwaukee, WI, fully described in Attachment A.

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 18 U.S.C. § 1956 and 1957 and Title 21, U.S.C. Sections 841 and 846

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Aaron Busche, DEA Task Force Officer
Printed Name and Title

Sworn to before me and signed in my presence:

Date: July 10, 2019

_____
Judge's signature

City and State: Milwaukee, Wisconsin

David E. Jones, U.S. Magistrate Judge

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Aaron Busche, being first duly sworn, hereby depose and state as follows:

## I. BACKGROUND

1. I am employed with the City of Greenfield Police Department, and have been so employed since April 2009. Since February 2015, I have held the position of Detective. Currently, I am assigned as a Task Force Officer with the Drug Enforcement Administration at the North Central HIDTA Opioid Task Force (DEA Group 63). I am an investigative or law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for offenses enumerated in Title 21, United States Code, Section 841 and 846 and Title 18, United States Code, Sections 1956 and 1957.

2. In the course of my experience, I have and continue to be involved in investigations of criminal offenses and have assisted with search warrants for items related to gang investigations, organized crime, violent crime, firearms offenses, drug trafficking, thefts, counterfeit crimes, forgeries, including cellular telephones and other electronic telecommunication devices.

3. I have had formal training in the investigation of drug trafficking; I have worked with numerous informants in the investigation of drug trafficking in the Milwaukee area; I have participated in the execution of numerous search warrants in which controlled substances, firearms, drug paraphernalia, and counterfeit monies were seized.

4. Based upon my training and experience, I am aware that individuals involved in the illegal possession of firearms may take photographs with the firearms or of the firearms and the individuals may take videos of their possession of firearms via cellular telephones.

5. Based on my training and experience, I am aware that individuals involved in the illegal distribution of narcotics may take photographs with, or of, those narcotics and with, or of,

proceeds of narcotics distribution (United States Currency) via cellular phones.

6. This affidavit is based upon my personal knowledge and upon information reported to me by other federal and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.

7. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

8. Because this affidavit is submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only facts that I believe are sufficient to establish probable cause.

9. For the reasons discussed herein, there is probable cause to believe that the premises located at and in the City and County of Milwaukee, more fully described in Attachment A, are items that constitute evidence of illegal naroctics possession and/or distribution, in violation of Title 21, United States Code, Sections 841 and 846 and Title 18, United States Code, Sections 1956 and 1957.

## II. THE DRUG DETECTION CANINE

10. That affiant states that "Drug Detection Canines" are trained to detect the odor of controlled substances; that these substances include marijuana, cocaine, heroin, as well as other dangerous drugs due to chemical processing similarities; that upon location of the odor of these controlled substances, the dog's behavior will change; that the dog is trained to come to a final response of biting and/or scratching at the source of the odor; that this final response is called an **"Alert"**; furthermore, this final response or **"Alert"** may also indicate items recently contaminated with, or associated with, the odor of one or more of the controlled substances;

11. That affiant further states that when a dog is trained to detect a substance, it learns to discriminate the odor vapor of that substance from other odors in the environment by reacting to the compound(s) that best help it earn reinforcement from the drug detection canine handler; that with sufficient training, the compound(s) whose detection most often results in reinforcement becomes the "odor detection signature";

## FLORIDA -v- JARDINES

12. That affiant is also aware of the recent Supreme Court decision in *Florida –v- Jardines* that a police officer's use of a trained narcotics detection canine at the front door of a home to reveal details inside that home, which the officer is unable to discover using the officer's ordinary powers of perception without a physical intrusion into the home, is a Fourth Amendment search requiring a warrant based on probable cause; that without a warrant a dog sniff was a governmental intrusion into the curtilage of a home and constitutes a search within the meaning of the Fourth Amendment because special protection is offered to the home and that the police violated *Jardines'* expectation of privacy by unlawfully entering his property without a warrant based on probable cause;

13. That affiant is further aware that the United States Supreme Court subsequently also held that the government's use of trained police dogs to investigation a home and/or apartment, and its immediate surroundings, is a "search" within the meaning of the Fourth Amendment; that in so holding, the Court relied on the special protections afforded to the home and the apartment dweller and the area immediately surrounding their home and/or their apartment, that is, the curtilage; that the Court went on to explain that while the knocker on the front door is treated as an invitation or license to attempt entry justifying ingress to the home by

solicitors, hawkers and peddlers of all kinds, it does not extend to a trained police dog to explore the area around the home in hopes of discovering incriminating evidence.

### III. PROBABLE CAUSE

14. In 2018, investigators from the Drug Enforcement Administration, Group 63, HIDTA Opioid Task Force initiated an investigation into Jonnie LOPEZ. LOPEZ has been identified as a large scale narcotics distributor in the Milwaukee area. At the time of the case initiation, LOPEZ resided at 1817 E. Windsor Place; in or around April 2019, LOPEZ moved and currently resides at 740 W. Wisconsin Avenue, Apartment 228.

15. Case agents obtained a list of tenants for the Library Hill Apartment complex through administrative subpoena. On the tenant list, case agents noted 740 W. Wisconsin Avenue, Apartment 228 was rented by Makaela KINGSBERRY and Jonnie LOPEZ.

16. In April, 2019, case agents met with a confidential source, here in after referred to as "CS-2." CS-2 provided information regarding suspects involved in drug trafficking in the Milwaukee, Wisconsin, area. CS-2 identified Jonnie LOPEZ aka "Jonnie" and "J-Money" as a large-scale distributor of heroin, cocaine, methamphetamine and marijuana in the greater Milwaukee area. CS-2 stated "Jonnie" is a Hispanic male, approximately 5'8", 150 lbs., 33-35 years old, and lives at a residence (duplex) on E. Windsor place in the City of Milwaukee. Investigators identified "Jonnie's" residence as 1817 E. Windsor Place. CS-2 stated he/she has known "Jonnie" for approximately six months and has conducted drug/money transactions from "Jonnie" in the past. CS-2 stated "Jonnie" drives a black Jeep Wrangler, and a grey Chrysler sedan.

17. CS-2 further stated on or around the first week of April, CS-2 was at "Jonnie's" residence (1817 E. Windsor Place, Milwaukee, WI), and observed a large quantity of heroin, cocaine, and methamphetamine. CS-2 believes "Jonnie" deals directly with a yet unknown source

of supply in Mexico. CS-2 stated "Jonnie" sends money down to Mexico, which covers transportation costs, as well as the quantity of narcotics being transported.

18. On May 2nd, 2019, CS-2 was shown a Wisconsin DOT photograph Johnnie D. LOPEZ (m/w 06-12-85) and positively identified Jonnie D. LOPEZ (m/w 06-12-85) as the heroin, cocaine, methamphetamine and marijuana dealer CS-2 knows at "Johnnie".

19. Case agents conducted a records check through NCIC of Jonnie LOPEZ, which showed LOPEZ is currently on Federal Probation for the Sale and Distribution of Marijuana in Eastern District of Wisconsin, DEA case I3-11-0051 (Sentenced 60 months, 3 years supervised release).

20. In the end of May 2019, CS-2 was interviewed and provided additional information about LOPEZ. CS-2 recorded a conversation CS-2 had with LOPEZ. LOPEZ informed CS-2, "they got here. **Chino** got some." LOPEZ told CS-2 altogether I have 52 of water." (TFO Busche clarified with the CS-2 that 'water' is a term used about Methamphetamine). LOPEZ further clarified and said he had "10 here right now." LOPEZ told CS-2 while "Pedro" was "here talking to me, his dad called and said he had 42 more" for LOPEZ. LOPEZ said once the "10" are gone "he" (Pedro) would transport "the Chinatown" and the "42" back.

21. On May 29th, 2019, case agents met with a CS-2 at a predetermined meeting location. The day prior to meeting with CS-2, CS-2 informed case agents CS-2 contacted a subject CS-2 I knew as "**Chino**" who worked for Jonnie LOPEZ and arranged to purchase a quantity of methamphetamine from "**Chino**" the following day. CS-2 informed case agents when CS-2 spoke with "**Chino**" the CI was told they would meet in the area of S. 30th Street and W. Lincoln Avenue.

22. Case agents searched CS-2 at the predetermined meeting location for any weapons, US currency and controlled substances with negative results. Case agents also searched the vehicle

operated by CS-2 for weapons, US currency and controlled substances with negative results. Once CS-2 and CS-2's vehicle was searched, case agents had CS-2 contact "**Chino**" through text messaging with (401) 443-0447, to confirm the meeting location to conduct the controlled buy of methamphetamine. CS-2 was equipped with a covert audio only transmitter/recorder as well as a covert video recorder. Case agents elected to depart the predetermined meeting location and began traveling to the buy location.

23. Following the controlled delivery, City of Waukesha Investigative Specialist (SPC) Tim Filter and TFO Busche met with CS-2 at a pre-determined meeting location. SPC Filter searched CS-2 for any weapons, controlled substances and US Currency with negative results. TFO Busche retrieved the covert audio and video recording devices as well as a black "convenience store bag" from the front passenger seat of the CS-2's vehicle which contained 454 grams of methamphetamine. TFO Busche, as witnessed by TFO Plennes, subjected a sample of methamphetamine to the Nark II, #01 Marquis Reagent test and received a positive result for the presence of methamphetamine.

24. In the beginning of June, 2019, CS-2 meet with LOPEZ at LOPEZ's residence, 740 W. Wisconsin Ave, Milwaukee. CS-2 stated while inside LOPEZ's apartment, LOPEZ obtained a clear plastic bag containing what CS-2 believed was a kilogram of heroin. LOPEZ advised CS-2 that he had ordered 4 more kilograms of heroin and 5 kilograms of fentanyl from his source of supply in California. The 9 kilograms were currently waiting for LOPEZ in California.

25. During the meeting between LOPEZ and CS-2, case agents established surveillance positions near the target residence. While CS-2 was in the residence with LOPEZ, surveillance units observed a subject case agents had identified as Pedro MENDOZA arrive and CS-2 confirmed MENDOZA entered LOPEZ's apartment. CS-2 stated LOPEZ and MENDOZA began

counting money and CS-2 departed the residence.

26. On a second occasion in June, 2019 CS-2 met with LOPEZ at the residence of 740 W. Wisconsin Avenue, Apartment 228. Case agents equipped CS-2 with a covert audio recording and monitoring device. After the meeting, CS-2 told case agents he/she observed LOPEZ distribute a quantity of heroin to an unknown male subject.

27. In the first week of July, 2019, case agents received information from CS-2 regarding a conversation CS-2 had with LOPEZ. CS-2 related that LOPEZ told CS-2 that LOPEZ was in possession of a kilogram or more of heroin and that LOPEZ was eager to distribute the heroin.

28. Based on the above information, there is probable cause to believe that the items described in Attachment B, which are evidence of violations of Title 18 U.S.C. § 1956 and 1957 and Title 21, U.S.C. Sections 841 and 846, as well as contraband, fruits of a crime, or other items illegally possessed are located at 740 W. Wisconsin Avenue, Apartment 228. I therefore request that this court issue a warrant to search the hallway outside of 740 W. Wisconsin Avenue, Apartment 228, Milwaukee, WI, and to seize the items specified in Attachment B.

## ATTACHMENT A
### Location to be Searched

740 W. Wisconsin Avenue is a red bricked, multi-unit apartment building occupying the north and south block of N. 8th Street between W. Wells Street and W. Wisconsin Avenue; the east and west blocks of W. Wisconsin Avenue between N. James Lovell Street and N. 8th Street. Apartment #228 is located in the northwest corner of a common hallway. The wooden door has a brass knocker affixed to the middle of the upper portion of the door. A number plate with the numbers "228" is affixed to the left of the door.





## ATTACHMENT B
### *Items To Be Searched*

A. The odor vapor of the following controlled substances which can be detected by the drug detecting K-9, emanating from the target apartment.

  1. The odor of Marijuana – a greenish plant like substance
  2. The odor of cocaine – a white, powdery or off-white chunky substance
  3. The odor of heroin – a tan or grey, chunky and/or powdery substance
  4. The odor of fentanyl – a white, powdered or chunky substance
  5. The odor of methamphetamine – a clear or off-white substance with a "glass-like" appearance.

B. This warrant does not authorize the seizure of any tangible property.